## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **Ruth Parker,**<br>        Plaintiff, Pro se<br><br>        **v.**<br><br>**Dennis L. and Diane Carey,**<br>        Defendants. | **CIVIL ACTION**<br><br>**NO. 12-4267** |

## MEMORANDUM RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**Baylson, J.**                                                                                    **December 11, 2012**

### I.        Introduction

This case arises out of a property dispute between neighbors.  Plaintiff, Ruth Parker, filed an action in Pennsylvania state court against Defendants, Mr. and Mrs. Carey, alleging violations of the federal Clean Water Act and National Historic Preservation Act, as well as common law trespass. Defendants removed the case to federal court and filed a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 (ECF 5).  Parker responded with a Motion for Change of Venue and Dismissal of Summary Judgment (ECF 10), and Defendants filed a Reply (ECF 11).  For the following reasons, Defendants' Motion is GRANTED IN PART, as to the federal claims.  The trespass claim is dismissed without prejudice.  Plaintiff's Motion for Change of Venue and Dismissal of Summary Judgment is DENIED.

### II.        Facts and Procedural History

Plaintiff and Defendants own adjacent properties on Pine Hill Road in King of Prussia, located in Upper Merion Township.  The Careys' home is elevated above the street level due to a sloping in the ground beneath their property.  In the fall of 2012, they

1

decided to sell their home so they could move to another part of the country and be closer to their children. But because the walls of their home were in poor condition, they hired a contractor, Ambrus Company LLC, to add fill and grade in front of them. They hoped this would ensure the home passed inspection. Ambrus Company obtained a "Stormwater Permit" from Upper Merion Township to proceed with the construction. (ECF 5, Ex. C). The township engineer who issued the permit visited the Carey property twice, both before and after the work began. (ECF 5, Ex. B, p.62-63).

On July 2, 2012, Ms. Parker filed a Petition for Injunctive Relief in the Montgomery Court of Common Pleas, requesting a temporary restraining order, a preliminary injunction, and a permanent injunction. Parker alleged the addition of topsoil on Defendants' property would increase the storm water runoff into her adjacent property. She brought claims under the Clean Water Act ("CWA"), 33 U.S.C. 1251, the National Historic Preservation Act ("Preservation Act"), 16 U.S.C. § 470, and state law (trespass). With respect to the CWA, Parker argued Defendants were required to obtain a National Pollution Discharge Elimination System ("NPDES") permit from the EPA before proceeding with their construction, which they did not do. With respect to the Preservation Act, she contended her home is over 200 years old and is therefore entitled to protection under Section 106 of the Act. That provision obligates federal agencies to assess the effects that federal "undertakings" will have on historic properties through screenings, 16 U.S.C. § 470(f), but no screening occurred here.  As to trespass, Parker contended the Careys were responsible for conducting "excavation and filling" and for placing "a silt fence and heavy equipment" on her property. (ECF 5, Ex. A) (Petition for Injunctive Relief in the Court of Common Pleas of Montgomery County).

The court denied Parker's request for a TRO. (ECF 5, Ex. E). It held a hearing on her request for a preliminary injunction and on July 16, 2012, denied that request as well. (ECF 5, Ex. F). Defendants resumed the fill and grading work and in short time, it was completed. Ambrus Company constructed a berm to divert potential storm water runoff from Defendants' property into Plaintiff's property.

On July 26, 2012, Defendants filed a removal petition in this Court under 28 U.S.C. 1441 (ECF 1). Defendants asserted this Court had federal question jurisdiction over the Preservation Act and Clean Water Act claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the trespass claim pursuant to 28 U.S.C. § 1367. On August 1, Defendants filed an Answer with Affirmative Defenses in response to Plaintiff's July 2, 2012 Petition in the Court of Common Pleas (ECF 3). Defendants moved for summary judgment on September 25, 2012 (ECF 5). Parker filed a Motion for Change of Venue and Dismissal of Summary Judgment on November 29, 2012 (ECF 10), and Defendants filed a Reply on December 6, 2012 (ECF 11). The Court held oral argument on all motions on December 11, 2012.

### III.   Legal Standard

#### A.  Summary Judgment

A district court should grant a motion for summary judgment if the movant can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id. Under

Rule 56, the Court must view the facts and all reasonable inferences in the light most favorable to the non-moving party. Id. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970)).

**B. Clean Water Act**

Section 402 of the Clean Water Act directs the EPA to issue "permits for discharge of pollutants" into the navigable waters of the United States. 33 U.S.C. § 1342(a). The permits issued under Section 402 are termed National Pollutant Discharge Elimination System ("NPDES") permits, and they must meet a host of requirements set forth by the CWA. Id.

Both federal and Pennsylvania law require that individuals contemplating construction projects involving "an earth disturbance activity that involves equal to or greater than 1 acre" obtain an NPDES permit. See 40 C.F.R. § 122.26(c)(1) ("Dischargers of storm water associated . . . with small construction activity are required to apply for an individual permit . . ."); id. § 122.26(b)(15)(i) (defining a "[s]torm water discharge associated with small construction activity" as "the discharge of storm water from [c]onstruction activities including clearing, grading, and excavating that result in land disturbance of equal to or greater than one acre"); 25 Pa. Code § 102.2(a) ("[A] person proposing an earth disturbance activity that involves equal to or greater than 1 acre (0.4 hectare) of earth disturbance . . . shall obtain an individual NPDES Permit . . ."). The EPA has delegated permitting responsibility under Section 402 to the state of Pennsylvania, so individuals in Pennsylvania must apply for NPDES permits with the Pennsylvania Department of Environmental Protection.

**C. National Historic Preservation Act**

The National Historic Preservation Act authorizes the Secretary of the Department of the Interior ("DOI") to maintain a National Register of sites, buildings, structures and objects that are significant in American history. 16 U.S.C. § 470 et seq. "The National Register is an authoritative guide to be used by Federal, State, and local governments, private groups and citizens to identify the Nation's cultural resources and to indicate what properties should be considered for protection from destruction or impairment." 36 C.F.R. § 60.2. The National Register impacts federal policy in numerous ways: it is "administered as a planning tool" by federal agencies; it "makes property owners eligible to be considered for Federal grants-in-aid for historic preservation"; and it can provide favorable tax treatment for rehabilitation and investment. Id. § 60.2(a)-(c).

The DOI's regulations set forth the procedures by which a property can be added to the National Register. 36 C.F.R. § 60.1(b). First, the property must be "nominated . . . on standard National Register forms." Id. § 60.5. Next, the DOI must make a "determination of eligibility," id. § 60.3(c), applying "criteria for evaluation" set forth in its regulations, id. § 60.4. Factors the agency will consider are whether the property is "associated with events that have made a significant contribution to the broad patterns of our history"; whether it is "associated with the lives of persons significant in our past"; whether it "embod[ies] the distinctive characteristics of a type, period, or method of construction"; and whether it yields "information important in prehistory or history." Id. § 60.4.

Under Section 106 of the Preservation Act, federal agencies, when contemplating an "undertaking" that will affect "any district, site, building, structure, or object that is

included in or eligible for inclusion in the National Register," must first consider the effects the undertaking will have on the historic property. In full, the provision states:

> The head of any Federal agency having direct or indirect jurisdiction over a proposed Federal or federally assisted undertaking in any State and the head of any Federal department or independent agency having authority to license any undertaking shall, prior to the approval of the expenditure of any Federal funds on the undertaking or prior to the issuance of any license, as the case may be, take into account the effect of the undertaking on any district, site, building, structure, or object that is included in or eligible for inclusion in the National Register. The head of any such Federal agency shall afford the Advisory Council on Historic Preservation established under part B of this subchapter a reasonable opportunity to comment with regard to such undertaking.

16 U.S.C. § 470(f). Although the term "undertaking" is not defined in Section 106, the DOI's regulations suggest the term refers to a project being executed by a federal agency. The regulations state: "Federal agencies *undertaking a project* having an effect on a listed or eligible property must provide the Advisory Council on Historic Preservation a reasonable opportunity to comment pursuant to section 106 of the National Historic Preservation Act of 1966." 36 CFR § 60.2(a) (emphasis added).

IV.    Discussion

Defendants contend they are entitled to summary judgment because Plaintiff has alleged no cognizable claims under the CWA or Preservation Act, and has presented no evidence to support her state law claim of trespass. The Court concludes Defendants are correct as to the federal claims. But it declines to exercise supplemental jurisdiction over Plaintiff's trespass claim, dismissing it without prejudice.

A. Clean Water Act

First, Plaintiff's cause of action under the Clean Water Act fails as a matter of law, entitling Defendants to summary judgment, because there is no genuine dispute of fact as to whether the CWA affords Plaintiff or her home any protection.  It does not.

Federal and state law requires individuals to obtain NPDES permits for "small construction projects" when the area impacted by the project is at least 1 acre large (43,560 square feet). See supra. The undisputed evidence shows that the construction project on the Carey property impacted an area smaller than 1 acre. Steve Ambrus, co-owner of Ambrus Company, filed an affidavit stating he filled and graded an area on the Carey property 50 ft by 150 ft large, or a total of 7,500 square feet.  (ECF 5, Ex. K, p.1). Mr. Carey testified that his entire property, both the area where the construction project would occur and the areas where it would not occur, was "approximately an acre, maybe just a hair more." (ECF 5, Ex. B, p.36). Meanwhile, Ms. Parker conceded that the Carey property was about 1 acre large and that she'd "assume" the area being filled was less than one acre. (ECF 5, Ex. B, pps. 23-24).[1] She has presented no evidence to support her

---

[1] Her testimony at the state court hearing, on cross-examination, was:

> The Court: The Carey's property, how big is the Carey's property? The people that you're suing, how large is their property?
> Ms. Parker: How large is their property?
> The Court: Yes. Is it an acre, 2 acres? Do you have any idea?
> Ms. Parker: Upper Merion is zoned at one acre for residential property. I would have to assume that the Carey's property meets at least the 1 acre unless they have a variance of some sort.
> Mr. Forster:  And that 1 acre includes the entire property, the house and the property behind it and the property that's not being filled as well as the property that's being graded and filled, correct?
> Ms. Parker:  I would assume so. I don't know.
> Mr. Forster:  Okay and the area that's being graded and filled is much smaller. It's only a portion of the entire property, correct?
> Ms. Parker: The area being filled is not the entire property. The area being filled is about 6 to 10 feet elevation difference.
> Mr. Forster:  Would you agree with me that the area that's being filled is less than 1 acre?
> Ms. Parker:  I don't understand.
> …
> The Court:  Less than 1 acre.
> Ms. Parker:  Well, it's not – I would assume it is not 1 acre. I don't know for a fact. It is a portion of their property. I can't make that assessment.

ECF 5, Ex. B, pps. 23-24.

present Motion for Change of Venue and Dismissal of Summary Judgment refuting Mr. Ambrus' description of the construction plan or showing the area impacted was 1 acre or larger.

Accordingly, the undisputed evidence demonstrates that an NPDES permit was not required. Plaintiff is entitled to no relief under the CWA.

### B. National Historic Preservation Act

Plaintiff's claim under the Preservation Act also fails as a matter of law because no fact finder could conclude based on the evidence in the record that Section 106 was triggered.

First, Plaintiff failed to present evidence showing her home is included on the National Register of Historic Places. At the state court hearing, she conceded her home is not currently listed on the National Register, has not been deemed eligible for inclusion, and that she has not even submitted an application to nominate her home for inclusion. (ECF 5, Ex. B, p.21-22). There is no genuine dispute of fact regarding whether the Preservation Act offers protection to Plaintiff's property – it does not.

Second, Section 106 of the Preservation Act is only triggered when there is a federal "undertaking" requiring a screening process. While the statute does not define the term "undertaking," the DOI's regulations suggest it refers to a project being executed by a federal agency or department. See 36 C.F.R. § 60.2(a) ("Federal agencies undertaking a project having an effect on a listed or eligible property must provide the Advisory Council on Historic Preservation a reasonable opportunity to comment pursuant to section 106 of the National Historic Preservation Act of 1966."). The fill and grading work on the Carey property was carried out by a private party. There was no federal

involvement in the construction whatsoever. Moreover, even if the issuance of an NPDES permit by the EPA (or its designee) were to qualify as a federal "undertaking" triggering Section 106, there was no need for an NPDES permit to be issued here given that the project impacted less than 1 acre of land. See supra.  For these reasons, there are no facts in dispute upon which a fact finder could conclude Section 106 was triggered.

As a matter of law, Plaintiff is not entitled to relief under the Preservation Act.

### C.  Trespass

In her July 2, 2012 Petition filed in state court, Plaintiff averred that Defendants were "doing excavation and filling" work on her property; that they did not "provid[e] survey documents or plot plans that clearly indicate property boundary lines"; and that there was "a silt fence and heavy equipment on Plaintiff's property." (ECF 5, Ex. A, p.2). This amounted to a claim for trespass under Pennsylvania common law. Defendants argue they are entitled to summary judgment on the trespass claim because Plaintiff has failed to put forth evidence supporting her allegations.

The Court declines to exercise supplemental jurisdiction over the trespass claim given that there are no remaining federal causes of action in this lawsuit.

### V.   Conclusions

Defendants are entitled to summary judgment in part, as to Plaintiff's causes of action under the Clean Water Act and the National Historic Preservation Act.  Plaintiff's action for trespass is dismissed without prejudice.  An appropriate order follows.


O:\CIVIL 12\12-4267 parker v. carey\12-4267 - Memo S.J..doc